The condition of the bond was that Dickey should faithfully execute his gardianship [guardianship] "by securing and improving the estate of the said Nancy Shutt that should come into his possession, for the benefit of the said Nancy, until she should arrive at full age, or he be thereto sooner required, and that he should then render a true and plain account of his guardianship, on oath, before the justices of Orange County court, and deliver up, pay to, or possess the said Nancy of all such estate or estates as she ought to be possessed of; or to such other (499) person or persons as should be lawfully authorized to receive the same."
The pleadings admitted the execution of the bond, and on the trial the plaintiff proved that at May Term, 1818, of Orange court, Dickey made a return as guardian of Nancy Shutt, exhibiting her portion of the estate of her deceased father, by which he charged himself with $668.20, balance due her. Plaintiff further proved that Henry Shutt, father of Nancy, died possessed of a sufficient personal property, over and above his slaves, to entitle Nancy to the sum returned by her guardian as her proportion of that part of the estate. Henry Shutt, at the time of his death, owned also several slaves, which, on 1 March, 1819, were worth $2,600, and Nancy's portion therein was worth $520. In February or March, 1819, Dickey, with his family, removed to Guilford County, and in a short time thereafter, he or some other person by his direction, carried the negroes beyond the limits of the State, and neither he nor they have ever returned. On the part of the *Page 283 
defendants it appeared that Henry Shutt died in 1811, leaving a last will and testament, which was admitted to probate May Term, 1811, at which time his widow, Elizabeth Shutt, qualified as executrix. The will, among other clauses, contained the following: "It is my will and desire that my negroes should be kept together until my children arrive to full age or marry, and then to be divided between my beloved wife and my children, share and share alike equally"; and "it is my will and desire that whenever any of my children arrives at full age or marries, that his or her share of my estate be delivered to him or her immediately." It further appeared that the executrix sold the personal property of the estate except the slaves, as by the will she was directed to do if she thought it expedient, and she continued in the possession and use of the slaves until she married Dickey in 1817. There had been no guardian appointed for the infant plaintiff, Nancy, (500) or for any of Henry Shutt's children, before the appointment of Dickey; and after his marriage with the executrix, and until the removal of the family from Orange, the negroes had remained in the use and service of Dickey. No other return had ever been made by Dickey as guardian but the one before referred to, and it did not appear that any division had ever been made of the negroes between the widow and children of Henry Shutt. After Dickey left the State he was removed from his guardianship by an order of Orange County court, and Thomas Clancy was appointed guardian in his stead. The writ in the case was, "to answer Thomas Clancy, Thomas Whitted, and James Mebane, justices of the court of pleas and quarter sessions for the county of Orange, who sue to the use of Nancy Shutt, an infant, who sues by her next friend Thomas Clancy, of a plea that they render and pay to them the sum of £ 1,000, which they owe and detain from them, to their damage £ 100."
It was insisted below, on behalf of the defendants, that plaintiffs were not entitled to recover in this case, because the act of the Legislature requires that a guardian bond shall be made payable to the justice or justices present in court, and granting such guardianship, the survivors or survivor of them, their executors or administrators in trust, for the benefit of the child; and in this case the bond was made payable to Thomas Clancy, Thomas Whitted, and James Mebane, and the other justices of OrangeCounty court; and, secondly, if the plaintiffs were entitled to recover at all, they could not recover for Nancy her proportion of the value of theslaves, because Dickey never received or held the negroes as guardian, but as executor in right of his wife, or as legatee under the will, and in either event defendants were not *Page 284 
(501) liable as security for his guardianship; and defendant's counsel prayed the court so to instruct the jury; but the court refused, and charged the jury that the guardian bond bound James B. Dickey to take care of and deliver over to Nancy, on her attaining the age of 21 years, or marriage, or to such person as by law should be entitled to receive the same, all such property of hers as should come to his possession. That if it was proved to their satisfaction that Dickey had been in possession of the negroes, and had removed them from the State, that it was such a possession as rendered him liable to account with his ward for them, and that consequently the defendants were liable to answer to the plaintiff in this action for such damages as they should believe she had sustained by their removal from the State. If they should be of opinion that their removal amounted to a total loss, they ought to give the plaintiff Nancy her share of their full value. The jury found for the plaintiff, and assessed damages to $1,568.73. New trial refused, judgment and appeal.
This is a motion on the part of the defendants for a new trial on the ground of misdirection in the court, which is alleged to have occurred on one point, viz., in refusing to instruct the jury that the plaintiffs were not entitled to recover for the infant Nancy her proportion of the value of the negro slaves, because Dickey never received them as guardian, but as executor in right of his wife or as legatee.
Another exception taken at the trial below was that the bond was made payable to the plaintiffs and the other justices of Orange County, whereas the act of 1762 requires a guardian bond to be made payable to the justices present in court, and granting such guardianship, the survivor or survivors of them, their executors or administrators, in trust for the benefit of the orphan.
An exception was also taken on the argument in this Court that the damages assessed by the jury exceed those laid in the declaration or writ, which are only one hundred pounds, and that for this cause (512) the judgment should be reversed.
1. The condition of the bond binds the guardian faithfully to execute his guardianship, by securing and improving the estate of the ward that shall come to his possession for her benefit, until she shall arrive at full age, or be sooner thereto required, and then render a true and plain account of his guardianship on oath, etc. I admit that this *Page 285 
condition ought to receive a natural and reasonable construction, and should not be strained beyond its genuine import for the purpose of charging the sureties. The force of the argument on behalf of the defendants lies in this, that Dickey never was possessed of the negroes as guardian, but as executor in right of his wife; and although eloigning the property would have amounted to a breach of such condition if he had given bond as executor, yet it does not in his character of guardian. But by what evidence is the court to ascertain that he held the property as executor; for the testator does not direct his executors to keep the slaves, but only that "they shall be kept together." Every one acting in a trust of this kind shall be presumed, prima facie, to have done his duty; and as the law requires an executor to deliver over the property at the end of two years after the death of the testator to such persons as the will authorizes to receive it. An executor who is also guardian to one of the orphans, having possession of the property at the end of eight years, must be intended to hold it in the latter character. It is not an answer to this to say that here the property could not be divided until one of the children came of age, and consequently could not be delivered over; for, as the negroes were to be kept together, they must necessarily be kept by some one persons, and who so properly to take such a charge, in the silence of the will, as the guardian to one of the orphans, who is married to their mother? On the strict ground of right, too, this possession might be maintained; the legatees were all tenants in common; any one had as much right to the (513) possession as another, and, having obtained it, could not be interrupted until the period arrived for dividing the property. As the testator appointed his wife one of the two executors of his will it was reasonable to expect that the negroes should be kept together by her as executrix so long as it was lawful to detain them in that character, viz., two years, and that after that period she would become guardian to the children, and keep them together as such till one of them came of age or married. The reason, then, is much stronger for considering Dickey's possession as that of a guardian than an executor, and the condition of the bond is consequently broken if Nancy Shutt, the orphan, had a vested legacy in her share. On this point the intention of the testator scarcely admits of a doubt. The negroes are to be kept together till one child arrives at 21 or marries, and then are to be divided between his wife and children. This must have been for the use and benefit of his wife and children in the meantime, for they could be but little benefited by the other devises and bequests of the house, cattle, and horses, unless they had also servants *Page 286 
to take care of them. He considered the negroes as belonging to his wife and children immediately upon his death, though the particular share of each one was not to be ascertained until the period prescribed. This is also shown by another clause in the will. The second clause provides that the negroes shall be divided when his children come of age, but probably thinking that this mode of expression might postpone the division till they all arrived at age, while each one would require his or her share as he or she came of age or married, the testator adds another clause: that whenever one of his children arrives at full age or marries"that his or her share of my estate be divided to him or her immediately."
(514) In the preceding parts of the will he had given nothing to his children except the negroes and a share of the stock, if his wife should think proper to dispose of any; and it is to be inferred that in speaking of their share of his estate he principally and emphatically means his negroes. Taking the whole will together and considering that the only legatees in it were his wife and children, who were also residuary legatees, it admits of the same construction as if he had left the negroes to be kept together by his wife for the benefit of the family until one of his children should arrive at age or be married, when it was to be divided between them and his wife, thereby disannexing the time of division from the substance of the legacy. This would place the wife in the situation of a testamentary guardian for the children. Cro. Eliz., 252. A devise to trustees till A. shall have attained the age of 24, and when he shall attain that age to him in fee, gives him a vested interest, which will descend to his heirs though he die before 24. Doe v. Lea, 3 Term, 41.
From the construction of the will and the authority of the cases I think that the orphan had a vested interest in her share of the negroes.
2. In support of the second exception, it is urged that the other justices of Orange to whom the bond is made payable ought to have joined in the suit, and authorities have been read to show that where there are several obligees, and one or more of them brings the action without averring in the declaration the death of the others, it is fatal. The rule is well established that in all cases of contract if it appear on the face of the pleadings that there are other obligees or parties to the contract who ought to be but are not joined in the action, it is fatal on demurrer or on motion in arrest of judgment or in error. 1 Bos. Puller, 74. If the objection does not appear on the face of the pleadings the defendant may avail himself of it, either by plea in abatement or as ground of nonsuit on the trial, upon the plea of general *Page 287 
issue. 1 Saund., 153, n. 1. Then the first question is, Does (515) this objection appear on the face of the pleadings? The writ is brought in the name of the justices to whom the bond was payable, without taking any notice of the others, whose names are not mentioned in the bond. The declaration must be presumed to follow the writ, and it therefore makes a profert of the bond as it is there described; the defendant has not pleaded non est factum, but performance, and he consequently admits that he gave such a bond as is described in the declaration. And the jury were sworn to try the issue whether the defendants had performed the condition or paid the money demanded. Though profert be made of a deed, yet if oyer is not prayed the deed is not considered to be on the record; and if the defense be founded upon any objection to the form of the bond, and the defect do not appear upon the face of the declaration, oyer must be craved, and after setting forth the bond the defendant may demur. 2 Ld. Raymond, 1135; 2 Saund., 60, n. 3; 366, n. 1. So in pleading payment or performance of the condition of a bond, the defendant should set forth the condition after craving oyer. 1 Saund., 317, n. 2; and the want of oyer in a plea of performance is fatal. 5 Cranche, 257. It was argued that the mode of declaring upon bonds with collateral conditions, in the form recommended by modern writers, spreads the bond on the record and obviates the necessity of praying oyer. 1 Saund., 51. But the form of declaring, as exhibited in the best precedents, shows that only the condition of the bond is set forth and the breaches thereof. 2 Chitty's Plead., 163. It is perfectly clear, then, that this objection does not appear on the face of the record, and cannot therefore be availed of on demurrer, on motion in arrest of judgment or on error. The only other methods by which it could be taken advantage of were by plea in abatement, or as ground of nonsuit in the trial, upon the plea ofnon est factum, as a variance between the deed declared on and the one given in evidence. (516)
3. Before the statutes 8 and 9, Wm. III., ch. 11, the plaintiffs recovered the penalty of the bond, and might take out execution for it without regard to the real damage sustained; but, since that statute, he must assign his breaches, and the jury must assess damages for such as are proved to be broken. To the extent of the penalty the obligee may recover damages for a breach of the condition, though the same judgment is entered on the verdict as before the statute, viz., to recover the debt and nominal damages for the detention of it, and costs. The execution still issues for the amount of the judgment, but is indorsed to levy only the amount of the damages assessed for breach of the *Page 288 
condition, together with the costs. It cannot therefore be of any moment what damages are laid in the declaration and writ, whether they are nominal or otherwise, provided the damages assessed by the jury do not exceed the amount of the penalty. Here they are less than the penalty, and though the law is greatly beneficial to defendants it still considers the judgment as a security for the damages assessed. 2 Wn. 143.